**SCHIAN WALKER, P.L.C.**

3550 NORTH CENTRAL AVENUE, #1700
PHOENIX, ARIZONA 85012-2115
TELEPHONE: (602) 277-1501
FACSIMILE: (602) 297-9633
E-MAIL: ecfdocket@swazlaw.com
DALE C. SCHIAN, #010445
SCOTT R. GOLDBERG, #015082
Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | CHAPTER 11 |
| MCCALLISTER PROPERTIES, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT- GLOBAL VISION INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT INVESTMENT FUND GP, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT, LLC, an Arizona limited liability company; CENTREPOINTE HOLDINGS, LLC, an Arizona limited liability company; CENTREPOINTE DEVELOPMENT - LANESBOROUGH ASSET MANAGEMENT INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT OPPORTUNITY FUND LIMITED PARTNERSHIP, an Arizona limited partnership; CENTREPOINTE DEVELOPMENT - CARTER EVANS INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; RNFI UNLIMITED LLC, a Delaware limited liability company; RNFI UNLIMITED LLC, an Arizona limited liability company, <br><br> Debtors. | Case No. 2-12-bk-01288-GBN <br><br> JOINT ADMINISTRATION REQUESTED WITH: <br><br> 2-12-bk-01446-SSC <br> 2-12-bk-01448-RJH <br> 2-12-bk-01449-RTB <br> 2-12-bk-01452-RTB <br> 2-12-bk-01622-CGC <br> 2-12-bk-01624-GBN <br> 2-12-bk-01627-RJH <br> 2-12-bk-01648-CGC <br> 2-12-bk-01649-SSC <br><br> **DECLARATION OF RONALD K. FRANDSEN** |
| THIS FILING APPLIES TO: <br><br>   X   All Debtors <br><br>   ___   Specified Debtors | |

I, RONALD K. FRANDSEN, declare as follows:

1. I submit this declaration in support of all Chapter 11 petitions, the first-day motions, and other specified pleadings filed in these proceedings.

2. On January 24, 2012, McCallister Properties, LLC filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as amended) (the "Bankruptcy Code"), which case is pending before the United State Bankruptcy Court for the District of Arizona (the "Court") as Case No. 2-12-bk-01288-GBN.

3. On January 27, 2012, CentrePointe Development – Global Vision Investment Fund Limited Partnership; CentrePointe Development Investment Fund GP, LLC; CentrePointe Development, LLC; and CentrePointe Holdings, LLC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are pending before the Court as Case Nos. 2-12-bk-01446-SSC, 2-12-bk-01448-RJH, 2-12-bk-01449-RTB and 2-12-bk-01452-RTB, respectively.

4. On January 30, 2012, CentrePointe Development - Lanesborough Asset Management Investment Fund Limited Partnership; CentrePointe Development Opportunity Fund Limited Partnership; CentrePointe Development – Carter Evans Investment Fund Limited Partnership; RNFI Unlimited, LLC (Delaware); and RNFI Unlimited, LLC (Arizona) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are pending before the Court as Case Nos. 2-12-bk-01622-CGC, 2-12-bk-01624-GBN, 2-12-bk-01627-RJH, 2-12-bk-01648-CGC and 2-12-bk-01649-SSC, respectively.

5. The Debtors are limited liability companies and limited partnerships organized under the laws of Arizona or Delaware, and each with its principal place of business in Maricopa County, Arizona. Accordingly, venue of these Cases is proper in this District under 28 U.S.C. § 1408.

6. The Debtors are part of a group of entities formed by Jeff Tiller ("Tiller") to pursue real estate investment opportunities in the metro Phoenix area.

7. Debtors CentrePointe Development - Global Vision Investment Fund Limited Partnership; CentrePointe Development - Carter Evans Investment Fund Limited Partnership;

CentrePointe Development - Lanesborough Asset Management Investment Fund Limited Partnership; and CentrePointe Development Opportunity Fund Limited Partnership (the "Funds") were investment vehicles that accepted money from investors for use in special purpose entities that were to hold the particular investments.

8. Debtors CentrePointe Development, LLC; CentrePointe Holdings, LLC; and CentrePointe Development Opportunity Fund GP, LLC served as the general partner of the Funds, or as the manager of with the general partner or of each other.

9. Debtor McCallister Properties, LLC and Heritage Financial Management Services LLC; Meridian Professional Services LLC; Unique Auto Salon LLC; Unique Auto Sales LLC; Uniq Lifestyles LLC; Uniq Models LLC; Uniq Motorsport LLC; Uniq Records LLC; Playtime Entertainment LLC AZ; Potomac Asset Management LLC; The Shoppes At Crosspointe LLC; NWC Lindsey and Chandler Heights; 83rd & Glendale Ave LLC; Lemont & Shields Investments LLC; and Hyde Park Capital Partners (and with the debtor McCallister Properties, LLC, the "SPE's") were formed by Tiller to hold particular investments or for future investments.

10. Debtor RNFI Unlimited LLC, an Arizona LLC ("RNFI Unlimited Arizona"), was formed by me for the purposes of holding and administering the assets that Tiller had placed in the SPE's following Tiller's disassociation with the Funds and SPE's.

11. Debtor RNFI Unlimited, LLC, a Delaware, LLC ("RNFI Unlimited Delaware"), was formed by me for the purpose of managing the Funds and SPE's.

12. The SPE's and the Debtors are collectively referred to as "CentrePointe."

13. In addition to real estate, the CentrePointe made investments in media and other related entities as well as custom/luxury automobiles and a computer software firm.

14. Tiller formed and operated the CentrePointe until his departure in 2010. A combination of events including the collapse of the valley real estate market and poor financial management by Tiller caused the Debtors to sustain catastrophic financial losses.

15. I became responsible for the operation of CentrePointe following Tiller's disassociation.

Tiller hired me in 2008. Although I was hired by Tiller to be the Chief Financial Officer ("CFO"), Tiller refused to share any of the details of his operation of CentrePointe with me and my duties were primarily serving as a project manager for CentrePointe real estate projects until Tiller left unexpectedly and I was required to assume daily operations in 2010.

16. After I accepted employment in 2008, Tiller informed me that he was an experienced businessman and developer and that he would continue to be entirely responsible for all investment, financial and accounting matters.

17. My initial assignments included creating a database of the limited partners for Tiller. Tiller also directed that I prepare miscellaneous reports and other documents related to ongoing real estate projects. Later Tiller directed me to work with architects and engineers to obtain the entitlements necessary to develop the projects. I scheduled and planned project meetings and oversaw the bidding process for contracts as well as obtaining necessary development and financing documents to finance CentrePointe projects.

18. Tiller dictated the processes and timing of all interactions with the investors and brokers. Tiller also set the terms of broker commissions and payment schedules. Tiller was entirely responsible directing the purposes and uses of funds received from investors.

19. In early September of 2008, I accompanied Tiller to London to meet with brokers and investors. During the trip, Tiller conducted all of the meetings and communications.

20. In late September 2008, Stewart Title and Trust ("SST") sent Debtors a cease and desist letter. Specifically, SST notified Tiller that it was aware that Tiller had represented to investors that SST was guaranteeing the monies that investors deposited with Funds. SST also informed Tiller that he would no longer be permitted to use escrow accounts with SST for non-permitted uses.

21. Upon information and belief Tiller directed that any references to SST be removed from CentrePointe marketing materials and that investors be informed that SST had not guaranteed their investments with Funds. In the fall of 2011 when I discovered facts that caused me to conclude that some investors were not informed as requested and that at least one individual may have continued to

make inaccurate reference to SST in CentrePointe marketing materials.

22. Starting in October 2008, Tiller directed investments into what he envisioned would be a media empire that included magazines, records, entertainment, adult entertainment, television programming as well as custom luxury and performance automobiles. Tiller created all of the Unique/Uniq businesses as well as managing their operations and finances.

23. During that latter part of 2008, financial markets started to undergo a major readjustment. Most traditional lenders were either went out of business or were no longer lending for real estate ventures.

24. For most of 2009 I continued to manage the entitlement process for CentrePointe projects and handled special assignments from Tiller.

25. During the first quarter of 2010, as a result of not being able to pay the property taxes, two of CentrePointe seller-financed projects were lost in foreclosure. Apparently, Tiller made no attempt to set aside funds for the payments.

26. Later in 2010, Tiller expressed his lack of interest and focus in CentrePointe. Tiller expressed the intent to leave the United States and offered to sell CentrePointe to me.

27. I did only basic due diligence that was limited to an investigation of whether I believed additional financing was available to permit CentrePointe to complete its projects. After hiring attorneys in the United Kingdom to review the transaction I flew to London to meet with lenders in August, 2010.

26. After I received confirmation that the lenders had given the projects preliminary financing approval I agreed to assume control of CentrePointe. However, I was unable to complete the proposed financing to permit CentrePointe to complete its projects. Therefore, I continued to perform daily management of CentrePointe.

27. It was after taking control of the daily management responsibilities of CentrePointe that I learned of Tiller's mismanagement and misappropriation of assets as well as Tiller's accumulation of debts.

///

28. Tiller created more than 20 entities; however, some never did business, and the others are believed to hold no assets of significant value. I do not believe that any purpose would be served by filing bankruptcy for these entities, and substantial administrative costs would arise from such filings.

29. I have caused the filing of the Debtors identified herein. As a result of filing the Funds, I believe that all investors and third-party creditors will receive notice of these proceedings and of their right to share in distributions. Debtor RNFI Unlimited Arizona is, to my knowledge, the only entity that has maintained a bank account during the time I have managed CentrePointe and is the only entity which I believe currently holds physical assets. With the administration of the Funds, RNFI Unlimited Arizona and the remaining Debtors, I believe that this Court has before it all creditors, assets and entities necessary to fully and properly administer these proceedings. To the extent that it is later determined to be necessary or appropriate to administer additional related entities, it would be my intention to ask that those proceedings be jointly administered with the Debtors' cases.

30. Almost all of the debts are the result of funds collected from limited partners of four Funds.

31. Collectively the Funds have approximately 274 limited partners. All of the investors are based or reside outside the United States. Debtors and their counsel have had significant and continuing contact with representatives for most of the limited partners in order to keep them informed regarding the status of this matter. Debtors are also in the process of converting the CentrePointe website (www.cpdevelopment.com) to a vehicle to provide limited partners with access to all relevant information and important dates.

32. Tiller established the four Funds, which have separate and common investors. The offering memorandum indicated that the investors where to receive ownership interests in the SPE through which the funds were invested. However, my review of the books and records indicates that the assets were entirely commingled and that no ownership interests in the SPE's were ever identified, created or distributed. The CentrePointe venture was operated by Tiller as a single venture and it is my

belief that the only appropriate way to administer the assets and liabilities will be as a single pool.

33. During my tenure in administering CentrePointe, I have generally had a favorable working relationship with the investors and their representatives. However, on December 30, 2011, one group of investors brought an action in Arizona Superior Court against me, and four of the CentrePointe entities, including the largest of the four Funds. The Complaint sought to recover for three affiliated investors and sought the appointment of a receiver for four of the CentrePointe entities, but did not: (a) include the other three Funds; (b) include RNFI Unlimited Arizona which holds the remaining assets purchased with proceeds from the Funds; nor (c) did it afford notice to the other investors. Therefore, I concluded that it would be best to administer all of the assets and liabilities in a single proceeding and realized that the most cost effective way to do that would be for me to step aside and permit independent third-party management to prosecute the cases to successful conclusion.

34. I hired Timothy H. Shaffer, CIRA CTP, managing director of Clotho Corporate Recovery, LLC to serve as Debtors' Chief Restructuring Officer. Debtors have tasked Mr. Shaffer with the responsibility of locating and preserving Debtors' assets as well as managing its financial affairs and accounts. Mr. Shaffer is well versed in the administration of these types of matters and brings his invaluable experience to Debtors for the benefit of the limited and other creditors. I have vested in Mr. Shaffer my right to manage RNFI Unlimited Arizona and RNFI Unlimited Delaware. As result, Mr. Shaffer has control of both the assets available for administration and the authority to manage the Debtors and the SPE's.

35. I believe it is desirable to have this matter administered as a single venture with a pooled recovery for the benefit of all of the limited partners and creditors.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this __30th__ day of __January__, 2012.

_Ronald K. Frandsen_
Ronald K. Frandsen

| | |
|---|---|
| 1 | COPY of the foregoing mailed this __30th__ day of January, 2012, to: |
| 2 | |
| 3 | United States Trustee<br>230 North First Avenue, #204 |
| 4 | Phoenix, Arizona 85003-1706 |
| 5 | |
| 6 | __/s/    DEBBI STEPHENS__ |