ILENE J. LASHINSKY (#003073)
United States Trustee
District of Arizona

PATTY CHAN (CA Bar #256200)
Trial Attorney
230 N. First Ave., Suite 204
Phoenix, Arizona 85003-1706
Phone (602) 682-2633
FAX (602) 514-7270
Email: patty.chan@usdoj.gov

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MCCALLISTER PROPERTIES, LLC;<br>CENTREPOINT DEVELOPMENT -<br>GLOBAL VISION INVESTMENT<br>FUND LIMITED PARTNERSHIP;<br>CENTREPOINT DEVELOPMENT<br>INVESTMENT FUND GP, LLC;<br>CENTREPOINT DEVELOPMENT,<br>LLC;<br>CENTREPOINT HOLDINGS, LLC;<br>CENTREPOINT DEVELOPMENT -<br>LANESBOROUGH ASSET<br>MANAGEMENT INVESTMENT FUND<br>LIMITED PARTNERSHIP;<br>CENTREPOINT DEVELOPMENT<br>OPPORTUNITY FUND LIMITED<br>PARTNERSHIP;<br>CENTREPOINTE DEVELOPMENT -<br>CARTER EVANS INVESTMENT<br>FUND LIMITED PARTNERSHIP;<br>RNFI UNLIMITED, LLC (DE);<br>RNFI UNLIMITED, LLC (AZ);<br><br>Debtors. | In Proceedings under Chapter 11<br><br>Case No. 2:12-bk-01288-GBN<br><br>Jointly Administered with:<br><br>2:12-bk-01446-GBN<br>2:12-bk-01448-GBN<br>2:12-bk-01449-GBN<br>2:12-bk-01452-GBN<br>2:12-bk-01622-GBN<br>2:12-bk-01624-GBN<br>2:12-bk-01627-GBN<br>2:12-bk-01648-GBN<br>2:12-bk-01649-GBN<br><br>**UNITED STATES TRUSTEE'S:**<br><br>**(1) MOTION TO APPOINT A CHAPTER 11 TRUSTEE OR EXAMINER PURSUANT TO 11 U.S.C. §§ 105 AND 1104; AND**<br><br>**(2) REQUEST FOR EXPEDITED HEARING**<br><br>*Hearing requested on or before March 19, 2012* |

The United States Trustee for the District of Arizona (the "UST") hereby files her:

(1) "Motion to Appoint a Trustee or Examiner Pursuant to 11 U.S.C. §§ 105 and 1104 (the "Motion");" and (2) "Request for Expedited Hearing (the "Request")" in the above captioned jointly administered cases. The UST's Motion is supported by the attached Memorandum of Points and Authorities and the entire record before this Court in the above captioned proceeding.

RESPECTFULLY SUBMITTED this 9th day of March, 2012.

                          ILENE J. LASHINSKY

                          United States Trustee
                          District of Arizona

                          /s/ PC (CA Bar #256200)
                          PATTY CHAN
                          Trial Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  JURISDICTION, VENUE AND STANDING**

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. Under 28 U.S.C. § 586(a)(3)(G), the UST is charged with "monitoring the progress of cases under title 11 and taking such actions as the United States Trustee deems to be appropriate to prevent undue delay in such progress." This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. See In re Columbia Gas Sys., Inc., 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); In re Revco D.S., Inc., 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

**II.  SUMMARY**

3. The UST seeks the expedited entry of an order appointing a Chapter 11 Trustee, or alternatively an examiner pursuant to Sections 105 and 1104 of Title 11, United States Code (the "Bankruptcy Code"). The Court is presented with the disturbing facts of ten (10) jointly administered Debtor entities that have over 274 investors – many who are overseas and located in the United Kingdom – who have invested over $30 million that was fraudulently acquired under the guise that the investments were secured and that was then misappropriated to possibly 80 or more non-debtor affiliates by Debtors' management under the leadership of Jeff Tiller as 100% owner and of Ronald Frandsen as Chief Financial Officer ("CFO"), the latter now at the helm of the entities. The UST asserts that grounds exist for a Chapter 11 Trustee due to "cause" as well as being necessary to protect the best interest of creditors

2

and other interest holders; as an alternative, if this Court does not direct the appointment of a Chapter 11 Trustee, the UST asserts that an examiner is mandated by the Bankruptcy Code.

4. As set forth in more detail below, Debtors currently confront several alarming issues:

(1) **LACK OF CORPORATE AUTHORITY**: Of the 10 jointly administered Debtor entities, Mr. Frandsen had direct corporate authority over two of them: RNFI AZ[1] and RNFI DE. According to the Schedules and Statement of Financial Affairs ("SOFA") filed with this Court by Timothy Shaffer (the Chief Restructuring Officer) and Mr. Frandsen's own declaration, Debtors (excluding RNFI AZ and RNFI DE) remain wholly owned by Mr. Tiller. No documents exist whereby Mr. Tiller provided Mr. Frandsen any corporate authority by which to "roll up" the corporate authority over these Debtors into RNFI AZ and RNFI DE. As such, no similar documentation exists to grant such corporate authority to Mr. Shaffer or any of the professionals, who were hired by RNFI AZ.

(2) **CONFLICTS BETWEEN MR. FRANDSEN, DEBTOR ENTITIES, AND DEBTORS' PROFESSIONALS**: Although $30 million was originally invested in Debtors between 2007 and 2010, these funds were drained from the Debtor entities originally created by Mr. Tiller to those created by Mr. Frandsen. Other than $276,366.17 held in an account held in RNFI AZ, only *de minimis* amounts exists in cash in the various 54 bank accounts holding a total of $7,441.48. This becomes problematic when Debtors' Schedules show that McCallister Properties, CPD Global Vision, and CPD all hold claims against RNFI AZ for "indemnification, unjust enrichment or resulting trust." Conflicts heighten when the CPD's SOFA shows that Mr. Tiller was allowed to dissipate over $99,000.00 in cash from Debtors' bank accounts during January 2011 through August 2011, when Mr. Frandsen had assumed control. Further, the facts appear to show that Mr. Frandsen also transferred property from a Debtor affiliated entity – Potomac Asset Management, LLC – to himself for his own benefit. Moreover, if Mr. Frandsen does not hold any corporate authority over the Debtor entities except for RNFI AZ and RNFI DE, then Debtors' counsel, Mr. Shaffer as well other professionals employed in this case may be facing an irreconcilable conflict having initially been engaged by and then later employed and funded by RNFI AZ.

---

[1] For clarity, the UST shortened each of the Debtors' corporate names. Please see UST's Omnibus Statement of Facts, p. 2 at ¶ 2.

(3) **CONTINUED GROSS MISMANAGEMENT AND ACTIONS DETRIMENTAL TO DEBTORS**: Mr. Frandsen is inextricably tied to a prior management led by Mr. Tiller that has defrauded investors and misappropriated their funds. Mr. Frandsen failed to protect the interest of investors either by informing them of Mr. Tiller's misdeeds or protecting their investments after assuming control by preventing Mr. Tiller from accessing Debtors' bank accounts. Mr. Frandsen has used assets like the property belonging to affiliates, like Potomac Asset Management LLC, under his control for his own benefit. Further, two days before hiring Mr. Shaffer and merely weeks before the filing of the bankruptcy, Mr. Frandsen filed a UCC Statement securing all the assets of Virtual Office Global, LLC – an entity in which RNFI AZ invested $1 million and in which Mr. Shaffer has yet to conduct a complete review, including the "viability of the enterprise." Debtors are not presently conducting business and are heading towards liquidation. As stated by Mr. Shaffer, Debtors are currently grossly mismanaged and are suffering a plethora of issues, including those related to control, accounting, culture, financial viability, operating strategy, investment portfolio focus, tax reports, and fraud.

(4) **DEBTORS ACKNOWLEDGE THE NEED OF AN EXAMINER AND SPECIAL COUNSEL**: Not only are Debtors suffering managerial and financial crises, they are certain to be subject to intense investigations going forward. Mr. Shaffer even acknowledges that he anticipates the need for a "certified fraud examiner" and "special legal counsel" at a later date. Based on the disturbing facts and urgent matter, especially in light of the upcoming sale of debtor and non-debtor assets, a Chapter 11 Trustee must be appointed to prevent further disaster being imposed upon the Debtors' estate and their creditors.

5. The UST believes that the appointment of a trustee is appropriate in this case *even if* the Court finds that "cause" as defined under § 1104(a)(1) does not exist. Mr. Frandsen, who is leading the current management team, was in place during the time when Mr. Tiller began defrauding creditors and misappropriating investors' funds into his possibly 80 or more non-debtor entities. The pre- and post-petition action – or possibly *in*action – of current management has detrimentally caused substantial issues to arise in Debtors with regards to control, accounting, culture, financial viability, operating strategy, investment portfolio focus, tax reporting, and fraud. The continuing gross mismanagement of Debtors' present management mandates the appointment of a Chapter 11 Trustee to serve in the best interest of

4

creditors and other parties in interest.

6. Lastly, if a Chapter 11 Trustee is not appointed, the UST requests and asserts that the Court is required to appoint an *independent* examiner pursuant to Section 1104(c)(2) because a Chapter 11 Plan has not been filed in this case and Debtors have over $5 million in outstanding liquidated, non-contingent, and undisputed unsecured claims against them that are not owed to insiders.

### III. STATEMENT OF FACTS

7. The UST hereby incorporates by reference all of those facts contained in the Omnibus State of Facts filed concurrently herewith in support of her: "(1) Motion to Appoint a Chapter 11 Trustee or Examiner Pursuant to 11 U.S.C. §§ 105 and 1104; and (2) Request for Expedited Hearing;" and "(2) Any Subsequent Motions or Objections."

### IV. REQUEST FOR EXPEDITED HEARING

8. Pursuant to Local Rule 9013-1(h) the UST hereby requests the Court to set an expedited hearing regarding her Motion as soon as practicable because it is unclear under what authority the current management has to control Debtors, or more significantly, to begin liquidating Debtors and non-debtors' assets in this case. Moreover, it is also critical that a responsible fiduciary be appointed to actively protect records and to secure assets invested in Debtors, including the $30 million investor funds that have been commingled, transferred, and transformed from cash to other tangible assets between the Debtor entities as well as to possibly over 80 non-debtor entities. These non-debtor entities are not under the purview of this Court and their assets may have been purchased with Debtors' funds. Such assets are believed to be easily transferred. Most importantly, Debtors have proposed to liquidate assets pursuant to their expedited Sale Motion and Sale Motion Supplement and may be attempting to sell assets without proper corporate authority.

### V. RELIEF REQUESTED

9. By this Motion, the UST seeks the entry of an order directing the appointment of a Chapter 11 Trustee or in the alternative, an examiner to act as fiduciary for the Debtors; directing Debtors, Affiliates, and their officers, directors, managers and other employees, if any, to cooperate with the fiduciary; and vesting the fiduciary with the power to carry out the duties.

5

## VI. LEGAL ARGUMENT

### A. A Responsible Fiduciary Must be Appointed Pursuant to Section 1104(a) of the Bankruptcy Code

Section 1104 of the Bankruptcy code provides:

> (a) At anytime after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, ***the court shall order the appointment of a trustee–***
>
> (1) ***for cause,*** including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management***, either before or after the commencement of the case***, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.
>
> . . .

See 11 U.S.C. § 1104 (emphasis added).

Subsection (a)(1) addresses management's pre- and post-petition misdeeds or mismanagement, while subsection (a)(2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. In re Bellevue Place Associates, 171 B.R. 615, 623 (N.D. Ill. 1994). Where the Court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. In re W.R. Grace & Co., 285 B.R. 148, 158 (Bankr. D. Del. 2002). The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. See In re Marvel Entm't. Corp., 140 F.3d 463, 472 (3d Cir. 1998) (quoting Comm. of Dalkon Shield Claimants v. A.H. Robbins Co., 828 F.2d 239, 242 (4th Cir. 1987). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). See, e.g., In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir. 1989); In re Colby Constr. Corp., 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be taken on a case by case basis, taking into account all relevant factors.

6

<u>Sharon Steel</u>, 871 F.2d at 1225.

**(1)   Sufficient Cause Exists for the Appointment of a Chapter 11 Trustee**

In this instance, the UST asserts that cause exists for all the above reasons requiring the appointment of a Chapter 11 Trustee. In Debtors' jointly administered cases, the Court is confronted with: (a) a lack of corporate authority by Debtors' current management; (b) conflicts between Mr. Frandsen, Debtor entities, and Debtors' counsel; (c) continued gross mismanagement and actions detrimental to Debtors; and (d) Debtors acknowledge the need of an examiner and special counsel.

**(a)   Lack of Corporate Authority**

Despite the numerous documents filed by Debtors so far, nowhere has there been any proof provided or assertions made that Mr. Frandsen actually purchased Debtors or any related entities from Mr. Tiller. This is most clearly stated in the Debtors' Motion to Authorize, which states that Mr. Tiller abandoned Debtors and the other 80 or more non-debtor entities and that Mr. Frandsen formed RNFI AZ and RNFI DE to exert control over the Funds and to better control whatever assets remained in the Special Purpose Entities.

No documentation has yet been provided that Mr. Frandsen has any pre-petition authority to effect the transfer of the Funds or the Special Purpose Entities to RNFI AZ or RNFI DE. In fact, Debtors' Schedules and SOFAs confirm Mr. Tiller continues to hold a 100% ownership interest in Debtors, excluding RNFI AZ and RNFI DE. In fact, RNFI AZ and RNFI DE's Schedules and SOFAs actually confirm that these entities do not possess any ownership interest in the other Debtor entities or in any of the 80 or more Affiliates, including the Special Purpose Entities..

Since Mr. Frandsen's authority to transfer any rights to Mr. Shaffer begins and ends with RNFI AZ and RNFI DE, Debtors' Schedules and SOFAs appear to confirm that Mr. Shaffer lacks any corporate authority over Debtors or any of the non-debtor entities that did not originate with Mr. Frandsen. It is not surprising that Debtors are now seeking authority from the Court to endow Mr. Shaffer with some legitimate powers over such entities in Debtors' Motion for Authority.

**(b)   Conflicts between Mr. Frandsen, Debtor Entities, and Debtors' Counsel**

Over the course of 2007 through 2010, Debtors received over $30 million through various

7

investment vehicles. These investments originated in the Debtor entities created and still owned by Mr. Tiller (which excludes RNFI AZ and RNFI DE) but have dissipated except for $276,366.17 in a bank account now held by RNFI AZ owned Mr. Frandsen. According to Mr. Shaffer, except for the funds in RNFI AZ, none of these monies are found to exist in cash form today other than in small denominations held in various bank accounts totaling at most $7,441.48 and in Uniq Auto Salon's account totaling $1,601.61.

This becomes more problematic when based on Debtors' Schedules and Statements, it is clear that several Debtor entities have claims against each other. CPD Global Vision has listed a claim against CPD. More alarming is that McCallister Properties, CPD Global Vision, and CPD all hold claims against RNFI AZ for "indemnification, unjust enrichment or resulting trust."

The conflict increases in light of the fact that Mr. Frandsen in his individual capacity – having assumed control of Debtors beginning in November 2010 – allowed Mr. Tiller to drain over $99,000.00 in cash from CPD during the period of January 2011 through August 2011.

Worse, Mr. Frandsen has engaged in transactions with affiliates under his control that appear only to benefit him. As indicated in Shaffer's Report, Potomac Asset Management LLC is related to Debtors. In April 2011, Mr. Frandsen transferred a single family residence valued at approximately $1.2 million from Potomac Asset Management LLC to himself. Mr. Frandsen then obtained a personal loan in the amount of $425,000.00 secured by this property on May 2011. On January 24, 2012, Mr. Frandsen received $700,000.00 for the sale of the property, which was relisted on February 13, 2012 for $1.1 million by the alleged purchaser, American Pacific Holdings, LLC.

Moreover, if Mr. Frandsen does not hold any corporate authority over the Debtor entities except for RNFI AZ and RNFI DE, then Debtors' counsel, Mr. Shaffer as well other professionals employed in this case may be facing an irreconcilable conflict having initially been engaged by and then later employed and funded by RNFI AZ.

**(c)  Continued Gross Mismanagement and Actions Detrimental to Debtors**

Debtors' documentation clearly present disturbing facts that Mr. Tiller defrauded creditors by presenting false documentation that their investments were secured, misappropriating the funds into

8

possibly over 80 non-debtor entities that remain outside the jurisdiction of this Court, and then allegedly fleeing the United States as Debtors' businesses appear to have collapsed. Throughout these events, Mr. Frandsen remains the longest standing member of Debtors' management team.

In this case, Mr. Frandsen assumed the title of CFO in 2008, accompanied Mr. Tiller on his trips to London to solicit brokers and investors, performed full due diligence as late as August 2010, and appears to have been in control of assets in 2010 when Mr. Tiller allegedly abandoned Debtors and other non-debtor entities. Even after assuming such control of Debtors and affiliated non-debtor entities for over a year, Mr. Frandsen acknowledges he does not have a clear understanding of Debtors' properties. Despite his presence during Mr. Tiller's fraudulent misconduct, Mr. Frandsen has consistently asserted his role was that of a mere project manager. However, this is disingenuous given that prior to this bankruptcy and as indicated by the Schian Supplemental Verified Statement, Mr. Frandsen had previously served as CFO for the jointly administered debtors in the Desert Design bankruptcy back in 2006; a case where Mr. Tiller was the principal of the Desert Design debtors. Further as discussed above, it is clear that even after assuming control, Mr. Frandsen allowed Mr. Tiller to misappropriate and to continue to drain Debtors' funds out of their bank accounts over an eight month period.

Also discussed above, Mr. Frandsen appeared to engage in transactions with Debtors' affiliates for his own individual gain. Such gross mismanagement is heightened by the fact that RNFI AZ made a $1 million investment in Virtual Office Global; yet only two days prior to bringing Mr. Shaffer on board, Mr. Frandsen recorded a UCC Statement securing all the assets of Virtual Office Global, LLC. If this is the case, then Mr. Frandsen either made this investment merely weeks before the filing of the bankruptcy or failed to file the UCC prior to that time.

In Mr. Frandsen's own words, Debtors have sustained "catastrophic financial losses" under Mr. Frandsen's constant presence. None of the Debtors are presently conducting business and the only possible resolution is the liquidation of Debtors' assets as asserted in the Sale Motion. Mr. Shaffer's Report confirms that Debtors are currently grossly mismanaged and suffer a plethora of issues, including those related to control, accounting, culture, financial viability, operating strategy,

9

investment portfolio focus, tax reports, and fraud.

**(d)   Debtors Acknowledge the Need of an Examiner and Special Counsel**

Mr. Shaffer has stated that he "anticipates the need for a certified fraud examiner at a later date" and "recognizes that special legal counsel may need to be retained." It is unclear why a fraud examiner is not immediately needed, especially as assets and possibly important records, receipts and other documentation may be lost as items are sold to third parties in the upcoming proposed sale. Moreover, the conflicts that exists between Debtor entities against specifically RNFI AZ, against Mr. Frandsen, against Debtors' counsel and other professionals, and against other third parties would appear to necessitate legal counsel now.

**(2)   Appointment of a Chapter 11 Trustee is in the Best Interest of the Estate and Creditors**

Section 1104(a)(2) of the Bankruptcy Code provides an additional basis for the appointment of a chapter 11 trustee. Courts have construed Section 1104(a)(2) to provide for a "flexible standard" and have "allow[ed] the appointment of a trustee even when no "cause exists." See, e.g., In re Sharon Steel Corp., 871 F.2d at 1226; see also In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Section 1104(a)(2) emphasizes the court's discretion allowing it to appoint a trustee when to do so would serve the parties' and the estates' interests." Id.

Some courts have considered the following factors in determining whether the appointment of a trustee is in the best interest of the parties under Section 1104(a)(2): (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. See In re Cajun Electric Power Co-Op, Inc., 1991 B.R. 659, 661-62 (M.D. La. 1995) aff'd 74 F.3d 599 (5th Cir. ), cert. denied, 117 S.Ct. 51 (1996); accord In re Ionosphere Clubs, Inc., 113 B.R. at 168.

**Current Management Continues to Fail to Act in the Best Interest of Creditors/Investors**

Mr. Frandsen's inability to protect creditors' interest despite having been a part of the

management since 2008 and allegedly taking the helm in 2010 renders him and Debtors untrustworthy as fiduciaries in the case. It would be impossible for the creditor body of these Debtors to have any confidence in the management team when even as Debtors are sliding toward liquidation, the most recent report by Mr. Shaffer indicates that Debtors continue to be grossly mismanaged, suffering issues related to control, accounting, culture, financial viability, operating strategy, investment portfolio focus, tax reports, and fraud. Moreover, despite forsaking the fiduciary duties and responsibilities when he assumed the title of CFO, Mr. Frandsen cannot completely absolve himself of all responsibility while Mr. Tiller conducted his fraudulent activities.

Mr. Frandsen failed to notify investors when he became aware that Mr. Tiller was misrepresenting to investors that Stewart Title was guaranteeing their investment. From his declaration, Mr. Frandsen did not appear to take any action even after he determined that some investors were not informed and that inaccurate references regarding Stewart Title was still occurring. Mr. Frandsen failed to notify authorities of Mr. Tiller's misconduct.

Further, in his declaration, Mr. Frandsen continues to fail to provide complete transparency, stating affirmatively that he would not disclose the more than 20 entities created by Mr. Tiller until later when *he* determined it to be necessary or appropriate to administer additional related entities. It is unclear whether the information lacking in the Schedules and SOFAs are a result of Mr. Frandsen's non-disclosures. At this moment, Mr. Frandsen – and as a result, Mr. Shaffer – appear to lack the corporate authority to administer Debtors' assets and Debtors' counsel may be conflicted in its representation of all the jointly administered entities. Further the Debtor entities appear to hold claims against each other, not to mention the funds originally invested in Debtors that have been siphoned to over 80 non-debtor entities that still have not been brought into the case, yet the assets of those entities are proposed to be sold at an upcoming auction. It would appear that the estate and the creditors would be better benefitted by the appointment of a trustee despite the cost of the appointment.

For the above reasons, sufficient "cause" clearly exists pursuant to Section 1104(a) and parties in interest to these proceedings better served pursuant to Section 1104(b) of the Bankruptcy

11

Code to warrant the appointment of a trustee. Moreover, due to the amount and value of the claims against Debtors, the Court must appoint an examiner pursuant to Section 1104(c) of the Bankruptcy Code.

**B.      The Bankruptcy Code Requires the Appointment of an Examiner**

If a trustee is not appointed under Section 1104(e), then the Court is required to appoint an examiner pursuant to Section 1104(c), which states:

> If the court does not order the appointment of a trustee under this section, then at any time *before the confirmation of a plan*, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court *shall* order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by *current or former management* of the debtor, if -
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) *the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services or taxes, or owing to an insider, exceed $5,000,000.*

Sections 1104(c)(1) and (2) (emphasis added).

No trustee has been appointed in this case. A Chapter 11 plan has not been filed in this case. Currently, Debtors are clearly suffering managerial and financial crises but are also embroiled in fraudulent misconduct and misappropriation of funds by Debtors' former management. From the Schedules filed with the Court, the debt threshold appears to be met with Debtors clearly having an unsecured creditor body that holds liquidated, non-contingent, and undisputed claims in excess of $5 million. Thus, the presence of all these factors invoke the mandatory provision of Section 1104(c)(2) for the appointment of an examiner upon the request of the UST.

### The Mandatory Provision of Section 1104(c)(2)

"It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)). The absurdity exception to the plain meaning rule ". . . is a very narrow exception that comes into play only where the result adhering to the plain

12

meaning rule 'is not just unwise but is clearly absurd' . . . and results in an absurdity that is 'so gross as to shock the general moral or common sense.'" United States v. Nix, 438 F.3d 1284, 1286 (11th Cir. 2006). A statute may be awkward, ungrammatical, and contain surplusage and still be fit for judicial enforcement. See Lamie, 540 U.S. at 534–36. Indeed, courts must ". . . give effect to [a] plain command, . . . even if doing that will reverse the longstanding practice under the statute and the rule." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35 (1998) (citations omitted).

On its face, the Bankruptcy Code requires the appointment of an examiner if the above stated requirements are met. The only appellate court to consider the above question reached this same conclusion explaining that "[t]he provision plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million, if the U.S. trustee requests one." In re Revco, D.S., Inc., 898 F.2d 498, 500-01 (6th Cir. 1990). Furthermore, every district court and nearly every bankruptcy court that has confronted the question has also read the provision to be mandatory on its face. See, e.g., In re Loral Space & Commc'ns, Ltd., 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004); In re Schepps Food Stores, Inc., 148 B.R. 27, 29-30 (S.D. Tex. 1992); In re Vision Dev. Group of Broward County, LLC, 2008 WL 2676827, at *3 (Bankr. S.D. Fla. June 30, 2008); In re Collins & Aikman Corp., 368 B.R. 623, 625 (Bankr. E.D. Mich. 2007); In re UAL Corp., 307 B.R. 80, 84 (Bankr. N.D. Ill. 2004); In re Mechem Fin. of Ohio, Inc., 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988); In re The Bible Speaks, 74 B.R. 511, 514 (Bankr. D. Mass. 1987); In re 1243 20th St., Inc., 6 B.R. 683, 684 n.3 (Bankr. D.D.C. 1980); In re Lenihan, 4 B.R. 209, 211 (Bankr. D.R.I. 1980).

In at least two instances, bankruptcy courts have denied requests for the appointment of examiners that appear to fulfill the statutory requirements on the ground of laches. See In re Bradlees Stores, Inc., 209 B.R. 36 (Bankr. S.D.N.Y. 1997) (waiving creditors right to seek independent examiner by allowing 13-month investigation to be conducted by debtors' professionals); In re Schepps Food Stores, Inc., 148 B.R. 27 (S.D. Tex. 1992) (holding possibility of waiving right to seek an examiner when request brought on eve of confirmation hearing). In this case, the availability of an

13

exception based on laches does not apply. The UST has been timely in her request, filing her motion at the beginning of this case. Moreover, those cases explicitly note that the statute is facially mandatory, which is the foundational observation in this immediate case upon which this Court's conclusion must rest. See In re Bradlees Stores, Inc., 209 B.R. at 38; In re Schepps Food Stores, Inc., 148 B.R. at 29-30.

Because "the meaning of statutory language, plain or not, depends on context," the Court must consider the text of Section 1104(c)(2) in light of Section 1104 as a whole. King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991); see also Wachovia Bank, N.A. v. United States, 455 F.3d 1261, 1266-67 (11th Cir. 2006) (stating that statutory constructions requires consideration of provisions and its language in context and that "[t]he Supreme Court has described statutory construction as 'a holistic endeavor.'") Such a contextual analysis strengthens the UST's argument that this Court must conclude that the mandatory nature of Section 1104(c)(2) is particularly clear when compared with the discretionary nature of Section 1104(c)(1). Whereas Section 1104(c)(1) predicates the appointment of an examiner on the court's determination that it is in the "interests of creditors, any equity security holders, and other interests of the estate," Section 1104(c)(2) only requires the debtor's fixed, liquidated, unsecured debts to exceed $5,000,000. Of course the statute also requires that a plan has not been confirmed and that the proposed investigation is of Debtors, which is consistent with context of this case.

"A provision for discretionary appointment, where the court is to consider the interests of parties in making *its own determination* whether an examiner is necessary, followed by a provision that only considers whether a dollar criterion has been satisfied, is conclusive that the second provision is compelling on the court." In re Schepps Food Stores, 148 B.R. at 30; see also In re Revco, 898 F.2d at 501("The contrast with § 1104(b)(2) [to § 1104(b)(1)] could not be more striking. . . . Unless § 1104(c)(2) requires the appointment of an examiner in such a case, it becomes indistinguishable from § 1104(c)(1)."); In re UAL Corp., 307 B.R. at 84 n.2 ("Indeed, if paragraph (c)(2) were not mandatory, then § 1104(c) would have the following meaning: 'If specified debt is less than $5 million, it is in the court's discretion to appoint an examiner; and if specified debt is more

14

Case 2:12-bk-01288-GBN   Doc 65   Filed 03/09/12   Entered 03/09/12 23:54:59   Desc
Main Document    Page 14 of 16

than $5 million, it is in the court's discretion to appoint an examiner.'").

VII. **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the UST respectfully requests the Court to:

A. Schedule an emergency hearing on the Motion;

B. Enter an Order, pursuant to §§ 105 and 1104, directing the immediate appointment of a Chapter 11 Trustee or in the alternative, an examiner subject to the scope of the examination as prescribed by the Court, and granting the Motion in all respects;

C. Enter an Order providing whatever other relief the Court deems necessary and appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 9th day of March, 2012.

ILENE J. LASHINSKY
United States Trustee
District of Arizona


/s/ PC (CA Bar #256200)
PATTY CHAN
Trial Attorney

Copies of the foregoing e-mailed on March 9, 2012 to:

DALE C. SCHIAN
SCOTT R. GOLDBERG
CODY J. JESS
SCHIAN WALKER, P.L.C.
3550 N. CENTRAL AVE. #1700
PHOENIX, AZ 85012-2115
Email: ecfdocket@swazlaw.com
Debtors' Counsel

CRAIG SOLOMON GANZ
QUINTIN CUSHNER
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Email: craig.ganz@gknet.com
Email: quintin.cushner@gknet.com
Attorneys for creditors JCT Management, Ltd.;
David Freear; and
William Freear

15

ALAN A. MEDA
STINSON MORRISON HECKNER LLP
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Email: ameda@stinson.com
Attorneys for creditors Lawshare Nominees Ltd;
Liberty Trustees Limited;
Lanesborough Funds PCC;
Global Vision International Fund II;
SMT Life;
Prime Locations PCC;
Buckhorn Investment Management; and
Fidelis Management

Copies of the foregoing mailed on March 12, 2012 to:

DALE C. SCHIAN
SCOTT R. GOLDBERG
CODY J. JESS
SCHIAN WALKER, P.L.C.
3550 N. CENTRAL AVE. #1700
PHOENIX, AZ 85012-2115
Debtors' Counsel

MCCALLISTER PROPERTIES, LLC et al
1635 N. Greenfield Rd., #126
Mesa, AZ 85205
Jointly Administered Debtors

CRAIG SOLOMON GANZ
QUINTIN CUSHNER
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Attorneys for creditors JCT Management, Ltd.;
David Freear; and
William Freear

ALAN A. MEDA
STINSON MORRISON HECKNER LLP
1850 N. Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Attorneys for creditors Lawshare Nominees Ltd;
Liberty Trustees Limited;
Lanesborough Funds PCC;
Global Vision International Fund II;
SMT Life;
Prime Locations PCC;
Buckhorn Investment Management; and
Fidelis Management

16