**SCHIAN WALKER, P.L.C.**

3550 NORTH CENTRAL AVENUE, #1700
PHOENIX, ARIZONA 85012-2115
TELEPHONE: (602) 277-1501
FACSIMILE: (602) 297-9633
E-MAIL: ecfdocket@swazlaw.com
SCOTT R. GOLDBERG, #015082
CODY J. JESS, #025066
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CHAPTER 11 |
| MCCALLISTER PROPERTIES, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT- GLOBAL VISION INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT INVESTMENT FUND GP, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT, LLC, an Arizona limited liability company; CENTREPOINTE HOLDINGS, LLC, an Arizona limited liability company; CENTREPOINTE DEVELOPMENT - LANESBOROUGH ASSET MANAGEMENT INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT OPPORTUNITY FUND LIMITED PARTNERSHIP, an Arizona limited partnership; CENTREPOINTE DEVELOPMENT - CARTER EVANS INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; RNFI UNLIMITED LLC, a Delaware limited liability company; RNFI UNLIMITED LLC, an Arizona limited liability company, | Case No. 2-12-bk-01288-GBN |
| | JOINTLY ADMINISTERED WITH: |
| | 2-12-bk-01446 |
| | 2-12-bk-01448 |
| | 2-12-bk-01449 |
| | 2-12-bk-01452 |
| | 2-12-bk-01622 |
| | 2-12-bk-01624 |
| | 2-12-bk-01627 |
| | 2-12-bk-01648 |
| | 2-12-bk-01649 |
| | **DEBTORS' CONTROVERTING STATEMENT OF FACTS IN SUPPORT OF ITS OPPOSITION TO MOTION FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXAMINER** |
| Debtors. | DATE: March 23, 2012 |
| | TIME: 9:00 a.m. |
| | LOCATION: 230 North First Avenue |
| | Phoenix, Arizona |
| | Courtroom 702, 7th Floor |
| THIS FILING APPLIES TO: | |
| X All Debtors | |
| ___ Specified Debtors | |

00218930.6

The Debtors[1] hereby submit this controverting statement of facts in response to the omnibus statement of facts ("**SOF**") [DE 66] filed by the UST in support of its Motion *to Appoint a Chapter 11 Trustee or Examiner Pursuant to 11 U.S.C. §§ 105 and 1104* (the "**Motion**") [DE 65]. This controverting statement of facts is supported by (i) the original declaration of Ron Frandsen (the "**Original Declaration**") [DE 12]; (ii) the concurrently filed Supplemental Declaration of Frandsen (the "**Supplemental Declaration**"); and (iii) the concurrently filed Shaffer Declaration of Shaffer (the "**Shaffer Declaration**").

**DEBTOR'S CONTROVERTING STATEMENT OF FACTS**

1.      The Debtors have no objection to SOF Nos. 1-12, 14, 17-25, 26, 28, 34-36, 38, 39, 42, 43, 47, 51 and 65.

2.      With respect to SOF No. 13, Frandsen formed RNFI Arizona, Portcullis Arizona, and other entities to acquire the assets that had been purchased with monies that the Debtor Funds had received from the Investors. This was accomplished through several asset purchase agreements (the "**Asset Purchase Agreements**") in which assets, many in the form of limited liability companies, were sold to entities that Frandsen controlled. In connection with the Asset Purchase Agreements, no purchase money changed hands. Instead, the acquiring entities assumed the liabilities that the seller or the purchased assets had directly or indirectly to the Investors. Supplemental Declaration at ¶ 6. The Asset Purchase Agreements have been filed at DE 82 to DE 88.

3.      With respect to SOF No. 15, Shaffer, as the CRO, owes fiduciary duties to the estates to preserve and recover estate assets. Under the agreement between RNFI Unlimited, LLC ("**RNFI Arizona**") and Shaffer, Shaffer has the authority to liquidate assets and to prosecute any and all legal claims subject only to the approval of the Bankruptcy Court and to the wishes of the Investors. Supplemental Declaration at ¶7. *See also* Shaffer's employment agreement attached as Exhibit "1" to the

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings given to them in the concurrently filed *Debtors' Initial Response to Motion to Appoint a Chapter 11 Trustee or Examiner and Request for Evidentiary Hearing Pursuant to Local bankruptcy Rule 9014-2(b)*.

-2-

Shaffer Declaration. Shaffer as the representative of the Debtors' estates has the full authority given to a debtor-in-possession pursuant to Code § 1107, including prosecuting all causes of action. *Id.*

4. Regarding SOF No. 27, the persons identified in subparagraphs (c) through (f) are believed to be brokers that introduced the Investors to the Debtor Funds. Another task assigned to Shaffer is to determine the extent to which these brokers and other third parties may be financially liable to the estates. Supplemental Declaration at ¶ 8.

5. Regarding SOF No. 29, there is nothing disturbing about Shaffer's activities as described in this paragraph. Pursuant to the agreement between RNFI Arizona and Shaffer as CRO, Shaffer's duties required him to preserve estate assets, which includes taking control of bank accounts believed to contain property of the estate. Moreover, because of Shaffer's presence, the Debtors no longer suffer control issues or accounting issues or issues related to the Debtors' culture. Instead, Shaffer has restored accountability and control to the Debtors. Shaffer Declaration at ¶¶ 7-11.

6. Regarding SOF No. 29(e), the subject property was originally acquired with monies that the Debtor Funds received, and then was transferred to an entity that Frandsen controlled after Tiller abandoned CentrePointe. Frandsen transferred the property to himself so that he could obtain a $425,000 loan, the proceeds of which he then used to pay the Debtors' bills. Supplemental Declaration at ¶ 9. Shaffer is in possession of the loan settlement documents that show the deposit of the loan proceeds in the company bank account, the sale settlement statement showing the deposit of the net sale proceeds into the debtor-in-possession bank account, and an appraisal showing that the property sold for full value. Shaffer Declaration at ¶ 14.

7. With respect to SOF No. 29(g), consistent with his fiduciary duties, Frandsen recorded a UCC-1 Financing Statement related to an investment that was made in an entity called Virtual Office Global, LLC, which is an entirely unrelated entity. The purpose of this recording was to protect the Debtors' assets. At the time, Frandsen did not recognize that the Financing Statement should have been recorded with the Secretary of State. This has been corrected. Supplemental Declaration at ¶ 10.

Case 2:12-bk-01288-GBN    Doc 95    Filed 03/22/12    Entered 03/22/12 18:56:39    Desc
Main Document    Page 3 of 7

8. Regarding paragraph 30, neither Global Vision Investment Fund Limited Partnership nor Lanesborough Asset Management Investment Fund Limited Partnership has liquidated, non-contingent, and undisputed claims in excess of $19 million and $7 million, respectively. The claims against these two Debtor Funds are based upon equity interests that the Investors were to receive in them. Moreover, any general unsecured claim that could be asserted against these two Debtor Funds would be in the form of an equitable claim, and thus cannot be said to be liquidated, undisputed and non-contingent claims. Shaffer Declaration at ¶ 9.

9. With respect to SOF No. 31(a), the Debtors' schedules reflect an attempt to preserve all claims and to assure that claims are preserved against all assets acquired with funds that originated from the Investors. The liabilities described in the schedules arise from the purchase of equity interests or as a result of an equitable trust. Shaffer Declaration at ¶¶ 9 and 16.

10. Regarding paragraph 37, Stewart Title sent the Debtors a cease and desist letter and barred Tiller from using escrow accounts with Stewart Title for "non-permitted uses." The term "non-permitted use" likely refers to any unauthorized use of the Investor funds that the Debtor Funds received. The Investor funds were initially received into accounts created at Stewart Title and were often disbursed from escrow accounts at Stewart Title. Shaffer is tasked with determining the culpability of Stewart Title, if any. Supplemental Declaration ¶ 11.

11. Regarding SOF No. 40, the Debtor Funds have 274 subscriptions agreements with about 17 different limited partnerships all of which are identified in the schedules. Shaffer Declaration at ¶ 8.

12. With respect to SOF No. 41, the Investors were intended to be the limited partners in the Debtor Funds. Shaffer Declaration at ¶ 9.

13. With respect to SOF No. 44, the filing in this case reflects a last known address in the Dominican Republic.

14. Regarding SOF No. 45, Tiller controlled CentrePointe and supervised all of the relationships between and among the Investors and controlled all bank accounts and uses of funds.

Case 2:12-bk-01288-GBN    Doc 95    Filed 03/22/12    Entered 03/22/12 18:56:39    Desc
Main Document    Page 4 of 7

Frandsen was the project manager for the real estate projects. The Court should note that the UST fails to refer to any evidence in support of its SOF No. 45. Original Declaration at ¶¶ 15-18.

15.     Regarding SOF No. 46, when he was hired, Frandsen was given the title of CFO. However, Frandsen only managed the real estate projects, while Tiller controlled all bank accounts and all uses of funds. Tiller had de facto CFO authority over all aspects of CentrePointe. Original Declaration at ¶ 15.

16.     Regarding SOF No. 48, the real estate projects, which were specifically approved under the offering memoranda provided to Investors, were divorced from all other "non- permitted uses" of the funds that the Debtor Funds received from the Investors. Frandsen managed the real estate projects but indicates he was kept in the dark by Tiller regarding the non-permitted uses. Supplemental Declaration at ¶ 12.

17.     Regarding SOF No. 49, the allegations that the UST makes in this paragraph are entirely consistent with Frandsen's statements that he was retained to manage the real estate projects. The services that Frandsen performed as identified in this paragraph are consistent with those that a project manner would perform. Supplemental Declaration at ¶ 13.

18.     Regarding SOF No. 50, the UST states a legal conclusion without supporting documents or authority that Frandsen had or breached any fiduciary duties.

19.     With respect to SOF No. 52, when Tiller offered Frandsen control of CentrePointe, Frandsen's primary concern was the ability to keep the real estate projects viable since this had been his area of responsibility for the prior two years. Supplemental Declaration at ¶ 14.

20.     Regarding SOF No. 55, not all of the entities that Tiller formed were filed as debtors because they did not receive monies that the Debtor Funds held, and did not hold and never did hold any assets upon which the claims of Investors could be satisfied. The Debtors have and continue to make full disclosure regarding these entities. Shaffer Declaration at ¶ 16.

21.     Regarding SOF No. 56, the caveat or disclaimer to the Debtors' statements and schedules was provided to alert all parties that an investigation by Shaffer was ongoing, and that the results thereof may require the statements and schedules to be amended. Shaffer Declaration at ¶ 15.

22.     Regarding SOF No. 57, the UST uses the wrong "tense" when describing the Debtors' operations as set forth in the CRO's report. For example, the report must be read to conclude that the Debtors lacked operational controls when operating pre-bankruptcy, but not that the Debtors **presently** lack operational controls. Shaffer Declaration at ¶¶ 11 and 12.

23.     With respect to SOF No. 59, the Investors were to receive limited partnership interests in the Debtor Funds only, which were then to be managed by entities that Tiller directly or indirectly controlled. While the Investors were listed on Schedule F as unsecured creditors based upon the dollars amounts they allegedly contributed to the Debtor Fund in question, they could have been scheduled as equity holders as well and the schedules clearly identify this. Shaffer Declaration at ¶ 9.

24.     With respect to SOF No. 60, the purpose of the Asset Purchase Agreements was to place Frandsen in control of whatever assets that had been acquired with the monies that had been deposited into the Debtor Funds. No purchase money exchanged hands under the Asset Purchase Agreements only an assumption of liabilities associated with the assets being transferred. All of the Asset Purchase Agreements have now been filed with the Court. Frandsen Declaration at ¶ 6.

25.     Regarding SOF Nos. 62-64, no written agreement is necessary to establish the authority of Frandsen to seek bankruptcy relief for the Debtors. Actual authority and delegated authority exist for this purpose. Regardless, the Portcullis Agreement was intended and does in fact grant this authority to Frandsen through his control of Portcullis. *See* Exhibit A5 thereto.

26.     Originally, Frandsen formed RNFI Delaware as the purchasing entity under the Portcullis Agreement. After the Portcullis Agreement was signed, however, Frandsen realized that the purchasing entity was mistakenly described as RNFI Arizona. By this time, Tiller had vanished so the Portcullis Agreement could not be corrected to reflect RNFI Unlimited, LLC (Delaware) as the purchaser. So

1 | Frandsen formed RNFI Arizona.  Supplemental Declaration at 15.

2 |    DATED this 22nd day of March, 2012.

3 |          SCHIAN WALKER, P.L.C.

4 |

5 |        By  /s/ SCOTT R. GOLDBERG, #015082
6 |          Scott R. Goldberg
         Cody J. Jess
         Attorneys for Debtors

7 |

8 | COPY of the foregoing e-mailed
this 22nd day of March, 2012, to:

9 |

Patty Chan, Esq.
10 | U.S. Trustee's Office
230 North First Avenue, #204
11 | Phoenix, Arizona  85003-1706
patty.chan@usdoj.gov

12 |

Alan A. Meda, Esq.
13 | Stinson Morrison Hecker, LLP
1850 North Central Avenue, #2100
14 | Phoenix, Arizona  85004-4584
Attorneys for Lanesborough Funds PPC;
15 | Global Vision International Fund II;
Lawshare Nominees; Fidelis Management
16 | ameda@stinson.com

17 |

18 | /s/ JULIE LARSEN

19 |

20 |

21 |

22 |

23 |

24 |

25 |