**SCHIAN WALKER, P.L.C.**
3550 NORTH CENTRAL AVENUE, #1700
PHOENIX, ARIZONA 85012-2115
TELEPHONE: (602) 277-1501
FACSIMILE: (602) 297-9633
E-MAIL: ecfdocket@swazlaw.com
DALE C. SCHIAN, #010445
SCOTT R. GOLDBERG, #015082
Attorneys for the Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CHAPTER 11 |
| MCCALLISTER PROPERTIES, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT- GLOBAL VISION INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT INVESTMENT FUND GP, LLC, a Delaware limited liability company; CENTREPOINTE DEVELOPMENT, LLC, an Arizona limited liability company; CENTREPOINTE HOLDINGS, LLC, an Arizona limited liability company; CENTREPOINTE DEVELOPMENT - LANESBOROUGH ASSET MANAGEMENT INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; CENTREPOINTE DEVELOPMENT OPPORTUNITY FUND LIMITED PARTNERSHIP, an Arizona limited partnership; CENTREPOINTE DEVELOPMENT - CARTER EVANS INVESTMENT FUND LIMITED PARTNERSHIP, a Delaware limited partnership; RNFI UNLIMITED LLC, a Delaware limited liability company; RNFI UNLIMITED LLC, an Arizona limited liability company, <br><br> Debtors. | Case No. 2-12-bk-01288-GBN <br><br> JOINTLY ADMINISTERED WITH: <br><br> 2-12-bk-01446-SSC <br> 2-12-bk-01448-RJH <br> 2-12-bk-01449-RTB <br> 2-12-bk-01452-RTB <br> 2-12-bk-01622-CGC <br> 2-12-bk-01624-GBN <br> 2-12-bk-01627-RJH <br> 2-12-bk-01648-CGC <br> 2-12-bk-01649-SSC <br><br> **DECLARATION OF TIMOTHY H. SHAFFER ON BEHALF OF CLOTHO CORPORATE RECOVERY, LLC** |
| THIS FILING APPLIES TO: <br><br> _X_ All Debtors <br><br> ___ Specified Debtors | |

00218956.3

I, TIMOTHY H. SHAFFER, declare as follows:

1. I am a resident of Maricopa County, Arizona, and am over the age of 18 years.

2. I submit this declaration in support of the *Debtors' Initial Response to United States Trustee's Motion to Appoint a Chapter 11 Trustee or Examiner Pursuant to 11 U.S.C. §§ 105 and 1104 and Request for Evidentiary Hearing Pursuant to Local Bankruptcy Rule 9014-2(b)* (the "**Response**").

3. I am the principal owner and manager of Clotho Corporate Recovery, LLC ("**Clotho**").

4. Pursuant to an engagement agreement between Clotho and RNFI Unlimited LLC (Arizona) ("**RNFI Arizona**"), Clotho was retained to act as the corporate restructuring officer ("**CRO**") for RNFI Arizona, and was granted whatever rights RNFI Arizona had with respect to the management, control and ownership of the joint venture referred to in the Response as CentrePointe. *See* Exhibit "1."

5. Neither myself nor Clotho has any relationship to the Debtors, Tiller or Frandsen.

6. As part of its engagement, Clotho initiated an assessment of the business practices of CentrePointe, and its relationship with the Investors as defined in the Response.

7. On March 4, 2012, Clotho issued a preliminary report ("**Preliminary Report**") of its findings, which are incorporated herein by this reference, but which are subject to amendment.

8. Based upon my initial investigation, the Fund Debtors (as defined in the Response) were formed as limited partnerships so that each of them was managed by a general partner. The general partner of the Fund Debtors was CentrePointe Development Investment Fund GP, LLC ("**CPD GP**") or CentrePointe Development, LLC ("**CPD**"). CPD GP was managed by CPD. It appears that CentrePointe Holdings, LLC was the sole member and manager of CPD and vice versa. It also appears that the Fund Debtors had 274 subscriptions agreements with about 17 different limited partnerships all of which are identified in the schedules. It appears that the Investors were solicited through offering memoranda.

9. Based upon my initial report, it appears that the Fund Debtors received about $32 million from the Investors, who were intended to be the limited partners (and thus equity holders) of the Fund Debtors. I believe that any claims held by the Investors against the Fund Debtors would thus be

equitable claims. While the Investors were listed on Schedule F as unsecured creditors based upon the dollars amounts they allegedly contributed to the Fund Debtor in question, they could have been scheduled as equity holders as well and the schedules clearly identify this.

10. The money raised by the Fund Debtors appears to have been commingled and disbursed in three directions. First to the real estate projects, second to about 70 or so limited liability companies and the assets they acquired, and third to Tiller for his own recreational uses. My preliminary conclusion is that Debtors' estates should potentially be substantively consolidation. Initially, many of tangible personal property assets appear to have been owned by an entity called Uniq Auto Salon, LLC. It now appears that these assets are owned by RNFI Arizona and that the Investors may have claims against them.

11. The Preliminary Report contained a heading called "Observations." The findings discussed under this heading refer to the Debtors' prior business practices. I am not aware of any misconduct since the Debtors' bankruptcy cases were filed. Specifically, I have installed necessary financial and accounting controls and have preserved the Debtors' books and records.

12. Clotho has taken control of the files and records of the Debtors and has completed the task of organizing, identifying, indexing, and scanning into a searchable database 80 banker's boxes of records and other records. The Debtors no longer are experiencing any lack of control or accountability.

13. Clotho is still undertaking the task of analyzing the records and researching the data to reconstruct a history of events and transactions. This remains a work in progress, although it is undeniable that substantial progress has been made. Because of the many hours that I have devoted to this engagement, the institutional knowledge I have gained should significantly improve the speed and efficiency in which the Debtors' bankruptcy cases are prosecuted.

14. I am aware that Mr. Frandsen recorded a UCC-1 Financing Statement related to an investment in an unrelated entity known as of Virtual Office Global, LLC. Clotho is in the process of investigating this investment, and whatever role Mr. Frandsen may have had in it. As of yet, no improprieties have been discovered, but all rights are reserved until the investigation is completed.

15. I am also aware about the sale of the single family residence. Based upon a preliminary analysis, the net sales proceeds are now property of the estate contained in a debtor-in-possession bank account, and the funds borrowed against the property before its sale appear to have been properly used to pay the legitimate expenses of the Debtors. It also appears that the property was sold for full value. In my possession are the loan settlement statement, the sale statement, and an appraisal of the subject property. My conclusions stated above are based upon my evaluation of these documents.

16. Because of the state of the Debtors' records, the Debtors' bankruptcy statements and schedules contained a caveat and or disclaimer that amendments may be necessary as more information becomes available. I consented to this disclaimer to prevent third parties from being misled into believing that the Debtors' statements and schedules were entirely accurate and should be relied upon as such. I was also attempting to preserve all legal claims of the Debtors and claims that the Debtors may have to assets.

17. Not all of the entities that Tiller formed were filed as debtors because they did not receive monies that the Fund Debtors held, and did not hold and never did hold any assets upon which the claims of Investors could be satisfied. The Debtors have and continue to make full disclosure regarding these entities.

I declare under penalty of perjury that the foregoing is true and correct.

///
///
///
///
///
///
///
///
///

Case 2:12-bk-01288-GBN    Doc 97    Filed 03/22/12    Entered 03/22/12 19:02:50    Desc
Main Document    Page 4 of 12

DATED this 22nd day of March, 2012.

                      /s/ TIMOTHY H. SHAFFER
                      Timothy H. Shaffer

COPY of the foregoing e-mailed
this 22nd day of March, 2012, to:

Patty Chan, Esq.
U.S. Trustee's Office
230 North First Avenue, #204
Phoenix, Arizona 85003-1706
patty.chan@usdoj.gov

Alan A. Meda, Esq.
Stinson Morrison Hecker, LLP
1850 North Central Avenue, #2100
Phoenix, Arizona 85004-4584
Attorneys for Lanesborough Funds PPC;
Global Vision International Fund II;
Lawshare Nominees; Fidelis Management
ameda@stinson.com

/s/ JULIE LARSEN

# EXHIBIT "1"

ENGAGEMENT AGREEMENT

This Engagement Agreement ("Agreement") is made as of January 12, 2012 (the "Effective Date") by and between RNFI Unlimited LLC, an Arizona limited liability company, and RNFI Unlimited LLC, a Delaware limited liability company (collectively, the "Client"); and Clotho Corporate Recovery, LLC, by its principal Timothy H. Shaffer ("Advisor").

RECITALS

A.  Client is contemplating the filing of a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Case").

B.  Client seeks to employ Advisor to act as its chief restructuring officer and as the authorized agent (collectively, the "CRO") of Client and to control in that role in the Bankruptcy Case.

C.  Advisor wishes to be employed as CRO of Client and to continue in that role in the Bankruptcy Case according to the terms and conditions set forth herein.

D.  Client, directly or indirectly controls the entities identified on the attached Exhibit "A" (the "Related Entities").  As a result of Advisor's employment by Client, Advisor shall also exercise Client's right to control the Related Entities.  Any right or power that Advisor may exercise for Client, Advisor may also exercise for any of the Related Entities.

E.  Client and Related Entities are collectively referred to herein as the "Administered Companies."

AGREEMENT

1.  **Employment**.  Client wishes to employ Advisor and Advisor agrees to provide services to Client on the terms and conditions set forth below.

2.  **Scope of Employment**.  Advisor shall be employed as CRO and shall be official representative of the Administered Companies.  As such, Advisor shall have the following duties and obligations:

> 2.1.  Manage, control and sign on all bank accounts;
> 2.2.  Collect assets and administer liabilities;
> 2.3.  To institute or defend any and all proceedings with respect to the Administered Companies, whether in law or equity, and specifically including petitions for relief in bankruptcy;
> 2.4.  Attend hearings, depositions, and provide testimony as appropriate;
> 2.5.  Prepare and sign monthly operating reports;
> 2.6.  Assist in formation of disclosure statement and reorganization plan;
> 2.7.  Retain legal and financial advisors for Administered Companies as appropriate;

2.8. Approve the filing and prosecution of motions and applications;
2.9. Approve the filing and prosecution of complaints and objections;
2.10. Negotiate with creditors, investors, and interested parties;
2.11. Provide for the disposition of assets;
2.12. Engage in any other activity to further the goals of Client;
2.13. Enter into contracts for and other obligate the Administered Companies; and
2.14. Direct, hire and terminate employees subject only to the limitation set forth in Section 3.

3. <u>Excluded Duties and Obligations</u>. Advisor is prohibited from modifying the terms and conditions of any service or employment agreement between Administered Companies and Ronald Frandsen and from materially modifying Frandsen's rights and remedies against Administered Companies or his duties and obligations to the Administered Companies.

4. <u>Best Efforts; Full Working Time</u>. Advisor shall devote substantial business time, attention, skill and experience, and shall apply his best efforts to the performance of his duties and the business and affairs of Administered Companies. Advisor may engage in other activities so long as such activities do not, either individually or in the aggregate, materially interfere with the proper performance of his duties and responsibilities hereunder.

5. <u>Communications</u>. Advisor's communications with Administered Companies shall be made through Frandsen and/or his designee. To the extent required, Advisor's services shall be subject to the United States Bankruptcy Code and, when applicable, subject to approval of the Bankruptcy Court that has jurisdiction over the Bankruptcy Case.

6. <u>Independent Contractor</u>. The relationship created hereunder is that of the Advisor acting as an independent contractor. The parties acknowledge Advisor is not providing legal services or acting as a broker/dealer and such services must be obtained by Client from other parties. Client has no responsibility or liability whatsoever for any of Advisor's taxes, benefits, insurance, pensions, worker's compensation, unemployment insurance, social security or any other taxes or payments. The parties agree that Advisor may perform any duties hereunder and set Advisor's own work schedule without day to day supervision by the Client or any of the Administered Companies.

7. <u>Exclusive Services</u>. During the Term, Advisor shall not, directly or indirectly, whether as a partner, advisor, creditor, shareholder, independent contractor or otherwise, promote, participate or engage in any activity or other business that competes with the business operations of Client. Advisor agrees that Advisor shall not enter into an agreement to establish, form, contract with or become employed by a competing business of Client while Advisor is employed by Client.

8. <u>Confidential Information</u>. The parties recognize that this Agreement may cause Advisor to acquire confidential information of Client. Advisor recognizes that all such confidential information is the property of Client. Advisor agrees that it shall not directly or indirectly disclose any confidential information without the prior written consent of Client,

-2-

Case 2:12-bk-01288-GBN    Doc 97    Filed 03/22/12    Entered 03/22/12 19:02:50    Desc
Main Document    Page 8 of 12

which agreement shall survive termination of this Agreement. Advisor shall exercise all due and diligent precautions to protect the confidential information.

9. <u>Office Location</u>. Advisor shall primarily perform his duties under this Agreement at the business address of Client or at Advisor's usual and customary place of business or at any location that the parties mutually accept.

10. <u>Term and Termination</u>. Unless earlier terminated as described below, Client hereby employs the Advisor under this Agreement for a period commencing on the Effective Date and ending on the earlier of (i) the Effective Date of a plan of a reorganization; (ii) the date the Bankruptcy Case is converted or dismissed; or (iii) the date that a trustee is appointed in the Bankruptcy Case. Any party may terminate this Agreement with or without cause upon approval of the Bankruptcy Court.

11. <u>Compensation</u>. Advisor shall be paid at a rate of $275 per hour and shall be paid once per month. Advisor shall not be entitled to any vacation, sick days, health insurance or to any other benefits. Advisor shall be reimbursed for reasonable business expenses that he incurs in the performance of his duties. Reimbursement shall be made in the ordinary course of business, but not than later 30 days after Client receives sufficient evidence that the expense has been reasonably incurred.

12. <u>Retainer</u>. Advisor has been paid a retainer of $_____. Advisor shall submit a monthly fee statement to Client and to any other party that the Bankruptcy Court directs. Unless a timely objection is filed, Advisor may apply the retainer to his outstanding fees. All compensation paid to Advisor shall be subject to final review and approval of the Bankruptcy Court.

13. <u>Advisor's Representations</u>. Advisor represents and warrants to Client that information he has provided to Client in connection with this Agreement is complete, true and accurate to the best of Advisor's knowledge and belief after good faith diligence and investigation. Advisor has not failed to disclose material information about Advisor to Client. Advisor shall promptly notify Client of any change in the accuracy or completeness of all such information.

14. <u>Indemnification</u>. The Administered Companies will indemnify, defend, and hold harmless the Advisor and its respective shareholders, members, directors, employees and agents (each, an "Indemnified Party") from and against any and all claims, liability, loss, cost, damage or expense (including reasonable attorneys' fees) asserted against or incurred by any Indemnified Party by reason of or arising out of, or in connection with, this Agreement or in connection with the performance under this Agreement, whether such claim, liability loss, cost, damage, or expenses is asserted by any person or entity.

15. <u>Choice of Law, Jurisdiction, Venue</u>. Except to the extent that the Bankruptcy Code applies, the rights and obligations of the parties and the interpretation and performance of this Agreement shall be governed by the laws of Arizona, excluding its conflict of laws rules, except as such laws may be interpreted, enforced, or preempted by federal law. The

-3-

Case 2:12-bk-01288-GBN    Doc 97    Filed 03/22/12    Entered 03/22/12 19:02:50    Desc
Main Document    Page 9 of 12

Bankruptcy Court that has jurisdiction over the Bankruptcy Case shall have jurisdiction to resolve any dispute related to this Agreement.

16. <u>Entire Agreement</u>. This Agreement contains the entire agreement among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous oral and written agreements, understandings and representations among the parties. There are no representations, agreements, arrangements, or understandings, whether oral or written, between or among the parties relating to the subject matter of this Agreement that are not fully expressed herein and therein.

17. <u>Notices</u>. Any notice under this Agreement shall be in writing, and any written notice or other document shall be deemed to have been duly given (i) on the date of personal service on the parties, (ii) on the third business day after mailing, if the document is mailed by registered or certified mail, (iii) one day after being sent by professional or overnight courier or messenger service guaranteeing one-day delivery, with receipt confirmed by the courier, or (iv) on the date of transmission if sent by telegram, telex, telecopy, or other means of electronic transmission resulting in written copies, with receipt confirmed. Failure to conform to the requirement that mailings be done by registered or certified mail shall not defeat the effectiveness of notice actually received by the addressee.

18. <u>Severability</u>. Advisor agrees that should any provision of this Agreement be declared or be determined by any court or other tribunal (including an arbitrator) of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby, and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be part of this Agreement.

19. <u>Amendment</u>. The provisions of this Agreement may be modified at any time by agreement of the parties, provided that such modification shall be ineffective unless in writing and signed by the parties hereto.

20. <u>No Transfer or Assignment; No Third-Party Beneficiaries</u>. The rights of Advisor hereunder have been granted by Client with the understanding that this Agreement is personal to, and shall be performed by Advisor. This Agreement is not transferable or assignable by Advisor in any manner.

21. <u>No Third-Party Beneficiaries</u>. No person or entity other than Client and Advisor shall have any rights whatsoever under this Agreement or to recover damages on account of a breach of this Agreement. No person or entity other than Client or Advisor shall have any right to enforce any provision of this Agreement. No heir, successor or assign of Advisor, whether voluntarily or by operation of law, shall have or succeed to any rights of Client or Advisor hereunder.

22. <u>Waiver</u>. Any of the terms or conditions of this Agreement may be waived at any time by the party entitled to the benefit thereof, but no such waiver shall affect or impair the right

of the waiving party to require observance, performance or satisfaction of that term or condition as it applies on a subsequent occasion or of any other term or condition.

23. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, including facsimile signatures, which shall be deemed original signatures. All executed counterparts shall constitute one agreement, notwithstanding that all signatories are not signatories to the original or the same counterpart.

24. <u>Further Assurances</u>. The parties will execute and deliver such further instruments and will take such other actions at the other part may reasonably request in order discharge and perform its obligations and agreements hereunder and to give effect to the intentions expressed in this Agreement.

The parties hereto have executed and delivered this Agreement as of the date first-above written.

RNFI UNLIMITED LLC, an Arizona limited liability company

By_____
    Ron Frandsen, its Manager

RNFI UNLIMITED LLC, a Delaware limited liability company

By_____
    Ron Frandsen, Member

CLOTHO CORPORATE RECOVERY, LLC

By_____/s/ Timothy H. Shaffer_____
    Timothy H. Shaffer, Principal

-5-

# EXHIBIT "A"

<u>Arizona Entities</u>:  CenterPointe Development LLC
CenterPointe Development Opportunity Fund GP, LLC
CenterPointe Development Opportunity Fund Limited Partnership
CenterPointe Realty LLC
CenterPointe Communities LLC
CenterPointe Construction LLC
CenterPointe Design LLC
Unique Auto Salon LLC
Unique Auto Rentals LLC
Unique Auto Sales LLC
Uniq Audio LLC
Uniq Autos LLC
Uniq LLC
Uniq Lifestyles LLC
Uniq Magazine LLC
Uniq Models LLC
Uniq Motorsport LLC
Uniq Records LLC
Uniq TV
Portcullis Development LLC
RNFI Unlimited LLC
The Shoppes at Crosspointe LLC
Playtime Entertainment LLC

<u>Delaware Entities</u>:  CenterPointe Development – Global Vision Investment Fund Limited Partnership
CenterPointe Development – Carter Evans Investment Fund LP
CenterPointe Development – Lanesborough Asset Management Investment Fund Limited Partnership
CenterPointe Holdings LLC
83rd & Glendale Ave LLC
NWC Lindsey & Chandler Heights, LLC
Lemont & Shields Investments LLC
McCallister LLC
Potomac Asset Management LLC
3460 E Kael LLC
NEC 91st & Indian School LLC
NWC 16th Street & Baseline LLC
Piazza De Campanas LLC
Piazza De Canale LLC
Piazza De Fontana LLC
Piazza De Palomas LLC
Piazza De Siena LLC
SEC 83rd and Glendale Ave LLC
SEC Dysart & Thomas LLC
The Shoppes at Crosspointe LLC
Uniq Lifestyles, LLC
Uniq Motorsports, LLC
Uniq Records LLC
Uniq Unlimited LLC